## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

SQUEEZE ME ONCE, LLC

CIVIL ACTION

VERSUS

NO.  19-787-JWD-RLB

SUNTRUST BANK AND JOHN DOES 1-10

### RULING AND ORDER

This matter is before the Court on a *Motion to Dismiss* ("*Motion*") filed by SunTrust Bank ("SunTrust" or "Defendant"). (Doc. 5.) In opposition, Squeeze Me Once, LLC ("SMO" or "Plaintiff") filed a *Memorandum in Opposition to Motion to Dismiss*. (Doc. 7.) SunTrust filed a reply. (Doc. 10.) Oral argument is not necessary. Having considered the facts alleged in the *Petition for Damages* ("*Petition*") (Doc. 1-2), the arguments of the parties, and the law, the Court will grant in part and deny in part the *Motion* for the reasons expressed below.

### FACTUAL ALLEGATIONS

For the purposes of this *Ruling and Order*, the Court accepts the well pleaded allegations in the *Petition* as true. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502-03 (5th Cir. 2014).

SMO is a Louisiana limited liability company with its principal place of business in New Orleans. (Doc. 1-2 at ¶ 1.) From February-April 2019, SMO engaged in negotiations through its agent Mr. Michael Kirschman, to purchase a ten percent share of Main Squeeze Juice Company Franchise, LLC ("Main Squeeze"). (*Id.* at ¶ 8.) To complete this transaction, SMO opened and funded a bank account at the Hancock Whitney Bank ("Whitney"). (*Id.*)

On April 23, 2019, SMO authorized a wire transfer of $400,000 from Whitney to Main Squeeze ("April 23 Transfer"). (*Id.* at ¶ 9.) SMO's wire transfer order provided the following information and instructions:

1

> Please wire $400,00[0] from Squeeze Me Once LLC (account ending [REDACTED]) to the following account:
> Name: Main Squeeze Juice Company Franchise, LLC
> Routing Number: 06100104
> Account Number: [… 9929]
> Bank Name: Sun-Trust Bank
> Bank Address: 1620 Martin Luther King Jr Blvd Suite 112, Raleigh, NC 27610
> SWIFT Code: SNTRUS3A

(Doc. 1-2 at ¶ 10.) Whitney executed the April 23 Transfer pursuant to these instructions. (*Id.* at ¶ 11.) SMO, Mr. Kirschman, Whitney, and Main Squeeze were not aware that the SunTrust account was fraudulent. (*Id.* at ¶ 12.) Unbeknownst to SMO, Mr. Kirschman, Whitney, and Main Squeeze, an unidentified foreign hacker gained access to Mr. Kirschman's email, intercepted the correct wire account instructions from Main Squeeze, and emailed a fraudulent SunTrust account number to Mr. Kirschman for the April 23 Transfer. (*Id.* at ¶ 13.) The account number ending 9929 was a valid account number at SunTrust, but the account was not in the name of Main Squeeze and was not registered to Main Squeeze's address. (*Id.* at ¶ 14.) Once SunTrust received the transfer order for the April 23 Transfer from Whitney, it had actual knowledge that the account number did not match the Main Squeeze name and address. (*Id.* at ¶ 15.) SunTrust accepted the wire transfer order and processed the April 23 Transfer. (*Id.*)

On May 9, 2019, SMO sought verification from Main Squeeze that it had received the $400,000 payment. (*Id.* at ¶ 16.) Main Squeeze informed SMO that it had not received the payment. (*Id.*) Mr. Kirschman investigated, determined that fraud had occurred, and sent notice to Main Squeeze, Whitney, and law enforcement. (*Id.* at ¶ 16-17.) Whitney contacted SunTrust to notify it of the fraud and requested a return of the April 23 Transfer. (*Id.*)

SunTrust did not return the April 23 Transfer to SMO's Whitney account. (*Id.* at ¶ 18.) SunTrust allowed substantially all of the $400,000 to be withdrawn from the account by the John Doe Defendants. (*Id.* at ¶ 19.) The John Doe Defendants are alleged to be the hackers. Further,

2

SunTrust refused to provide information regarding the holder of the 9929 Account, the dates, or the timing of the withdrawals from that account. SunTrust did not cooperate with law enforcement's investigation regarding the fraud. (*Id.* at ¶ 23.) SunTrust eventually returned $73,787.93 of the April 23 Transfer to SMO. (*Id.* at ¶ 21.) SMO incurred losses exceeding $325,000 as well as incidental and consequential damages. (Doc. 1-2 at ¶ 25.)

There is an action by a Mississippi law firm against SunTrust alleging substantially similar facts currently pending in the Southern District of Mississippi under the caption *Langston & Langston, PLLC v. SunTrust Bank & John Does 1-10*, No. 3:18-cv-741-CWR-FKB. (*Id.* at ¶ 24.)

## APPLICABLE STANDARD

In *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014), the Supreme Court explained "Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S. Ct. at 346-47 (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained: The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 555 [550] U.S. at 556, 127 S. Ct. at 1965.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.,* No. 10-00177, 2011 WL 938785, at *3

(W.D. La. Feb. 9, 2011) (citation omitted).

More recently, in *Thompson v. City of Waco, Tex.*, 764 F.3d 500 (5th Cir. 2014), the Fifth

Circuit summarized the standard for a Rule 12(b)(6) motion for dismissal:

We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff ... To survive dismissal, a plaintiff must plead enough facts to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Our task, then, is to determine whether the plaintiff state a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

*Id*. at 502–03 (citations and internal quotations omitted).

DISCUSSION

*a. Parties' arguments*

    1. Defendant's arguments in support

A. *The EFTA does not apply because SMO is not a natural person, its account is for commercial purposes, and wire transfers are explicitly excluded from the EFTA's definition of Electronic Fund Transfers.*

SunTrust argues that the Electronic Fund Transfer Act ("EFTA") does not apply to SMO and the facts of this case because the EFTA and its regulations define (1) "consumer" as a "natural person"; (2) "account" as "a demand deposit, savings deposit, or other asset account . . . established primarily for personal, family or household purposes"; and (3) "electronic fund transfer" to explicitly exclude "wire transfers". (Doc. 5-1 at 9-10.) As such, SunTrust maintains that SMO cannot state a viable claim under the EFTA as it is a Louisiana limited liability company, not a natural person, which used its account for commercial purposes and the money transferred from SunTrust is alleged to be an unauthorized wire transfer. (*Id.* at 10.)

B. *SMO's Petition for Damages fails to plead fraud with particularity as required under Rule 9(b).*

SunTrust contends that the allegations in the *Petition* do not meet the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b). (*Id.* at 11.) SunTrust maintains that the allegation that it "had actual or constructive knowledge that the John Doe Defendants had no right to the subject funds" and that "SunTrust's 'participation in acquiring and disbursing the subject funds constitute aiding fraud against SMO" is insufficient to state a claim for fraud. (*Id.*)  Specifically, SunTrust explains:

> There are no facts showing that SunTrust misrepresented or suppressed a material fact with the intent to deceive SMO, or that it was even in a position to make the kind of misrepresentation alleged by SMO, a third party and non-customer of SunTrust. Moreover, SMO provides no specific details regarding, *inter alia*, what knowledge SunTrust allegedly possessed indicating that "the John Doe Defendants had no right to the subject funds," when it obtained such knowledge, and how it obtained such knowledge.

(*Id.* at 12.)

C. *SMO fails to state a claim for negligence against SunTrust because Article 4A of the UCC displaces its allegations and SunTrust owes no duty to SMO, who is a third-party not a SunTrust customer.*

SunTrust asserts that because SMO's negligence claim centers on the wire transfer, Article 4 of the UCC displaces the allegations of negligence. (Doc. 5-1 at 13.) SunTrust points the Court to the comment to Article 4A of the UCC which states, "Article 4A governs a specialized method of payment referred in the Article as a funds transfer but also commonly referred in the commercial community as a wholesale wire transfer." (*Id.* at 13 (citing Comment to UCC § 4A-102).) SunTrust also argues that under Louisiana law, "claims for conversion and negligence grounded in general Louisiana law outside the ambit of the UCC are displaced by the UCC." (*Id.* (citing *Soileau*, 2019 WL 5296499, at *7).)

In the alternative, SunTrust argues that SMO cannot allege a claim for negligence because it does not and cannot allege that SunTrust owed SMO, a non-customer, a duty of care. (Doc. 5-1 at 13.) SunTrust recites, "Under Louisiana law, banks ordinarily owe *no duty*, fiduciary or otherwise, to third persons." (*Id.* at 14 (citing *Mose v. Keybank Nat. Ass'n*, 464 Fed. Appx. 260, 262 (5th Cir. 2012) (emphasis in original)).) Further, Louisiana Revised Statutes 6:1124 provides, "No financial institution . . . shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties . . . ***unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary***." (*Id.*) SunTrust concludes that SMO cannot allege a duty because the *Petition* does not allege: (1) it was a customer of SunTrust, (2) it had any relationship with SunTrust that would give rise to a duty, or (3) the existence of any written agency or trust agreement establishing that SunTrust would act as a fiduciary. (*Id.* at 14-15.)

### D. *SMO fails to state a claim against SunTrust under the UCC*

SunTrust asserts that SMO fails to state a claim under the UCC because it does not allege that SunTrust had either a duty to determine if the wire transfer order information was correct, or that it had actual knowledge that the customer with the SunTrust Account # . . . 9929 was not the proper and intended recipient of the wire transfer. (Doc. 5-1 at 16.)

### 2. Plaintiff's response

### A. *SMO concedes that it cannot state a claim under the EFTA*

SMO explains in a footnote that:

> SMO's original Complaint also alleged a claim for recovery under the Electronic Fund Transfer Act (EFTA), 15 U.S.C. § 1693 *et seq.* However, the EFTA limits its protections to "consumers", a defined term meaning "natural persons." 15 U.S.C. § 1693a(6). SMO is a business entity, not a natural person, and is thus excluded from the protections of the EFTA. *See Kashanchi v. Texas Commerce Med. Bank, N.A.*, 703 F.2d 936, 938 (5th Cir. 1983).

(Doc. 7 at 5, n. 2.)

### B. *SMO's allegations establish that SunTrust aided the John Does' fraud.*

SMO argues that the *Petition* alleges a claim under North Carolina law that SunTrust aided the fraud conducted by the John Does. (*Id.* at 6.) SMO asserts that North Carolina law applies to the "aiding fraud" claim and that the *Petition* adequately states a claim for "aiding fraud." Specifically, SMO details that "Aider liability requires proof of (1) an underlying fraud; (2) the aider's knowledge of this fraud; and (3) the aider's substantial assistance in achievement of the fraud." (*Id.* at 7 (citing *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 442 (S.D.N.Y. 2010)).) SMO contends that its allegations establish all three elements because the *Petition* alleges:

> (1) an underlying $330,000 hacking fraud perpetrated by the John Doe defendants; (2) SunTrust's actual knowledge of this specific fraud against SMO, *and* the same exact fraud perpetrated against other victims (resulting in the Mississippi Action); and (3) SunTrust's substantial assistance by providing the fraudulent bank account,

> allowing the John Doe defendants to make multiple fraudulent withdrawals over the course of nearly two weeks, and stonewalling SMO's and law enforcement's attempts to investigate the fraud, reducing the likelihood of any recovery.

(*Id.* at 7-8.) SMO argues that its allegations establish SunTrust's substantial assistance through its "deliberate indifference, actual knowledge, [and] facilitation and concealment of the fraud."

(*Id.* at 8.)

### C.  *SMO's allegations establish SunTrust's negligence*

SMO alleges that SunTrust did not act as a reasonably prudent banking institution by:

> (i) failing to implement procedures to prevent this specific type of fraud—including account opening, maintenance, and monitoring procedures—after being put on notice of the Mississippi Action; (ii) failing to train employees to properly handle suspicious/fraudulent withdrawal after being put on actual notice of fraud; (iii) failing to train employees and staff to properly administer wire transfers with mismatched information; (iv) failing to take reasonable actions to investigate the fraud at issue here; and (v) concealing information and refusing to cooperate with . . . efforts to investigate the fraud, preventing recovery of the stolen funds.

(*Id.* at 8-9.) These allegations establish its claim for negligence.

SMO also argues that the UCC supplements but does not displace legal remedies such as negligence, unless specifically preempted by a provision of the UCC. (Doc. 7 at 9.) SMO argues that by not pointing to a particular provision of Article 4A, SunTrust has waived its argument. SMO states that Article 4A does not displace its negligence claim because Article 4A "does not apply to a funds transfer any part of which is governed by the Electronic Fund Transfer Act." (*Id.* at 10 (citing La. R.S. 10:4A-108; *Soileau v. Midsouth Bancorp Inc.*, No. 19-CV-00537, 2019 WL 5296499, at *7-8 (W.D. La. July 19, 2019) (Hanna, M.J.), *adopted*, 2019 WL 5296505 (W.D. La. Oct. 18, 2019) (Juneau, J.)).) Plaintiff argues that its negligence claims extend beyond the April 23 Transfer, because it alleges that there were procedures it could have followed and actions that it could have taken before and after the April 23 Transfer. (*Id.* at 11.)

SMO contends that it was SunTrust's customer under the UCC's definition of customer, meaning "a person, including a bank, having an account with a bank or from whom a bank has agreed to receive payment orders." (*Id.* at 11 (citing La. R.S. 10:4-104(a)(3).) As such, SMO argues because it was SunTrust's customer, SunTrust owed it a duty and that it has stated a claim for negligence. (*Id.* at 12 (citing *Brothers Trading Company v. Charleston National Bank*, 972 F.2d 338, 1992 WL 187274 (4th Cir. 1992)).)

In the alternative, SMO argues that SunTrust owed it a duty because SunTrust acted as its agent under the UCC. (*Id.* at 14.) Specifically, SMO details:

> SMO is the owner and initiator of the wire transfer. Whitney is SMO's custodial bank and agent for funds disbursed by SMO. SunTrust, as the receiver of the wire transfer, is both the collecting bank *and* Whitney's correspondent bank (performing services on behalf of Whitney that Whitney cannot provide because it lacks direct access to the North Carolina market). As Whitney's collecting bank *and* correspondent bank, SunTrust acts as SMO's agent/subagent and owes fiduciary duties. Thus, under the facts alleged, an agency relation exists between SMO and SunTrust and SunTrust owed SMO a duty of care which was breached by its actions in handling the April 23 Transfer.

(*Id.* at 15 (internal citations omitted).) Because SunTrust was SMO's agent, it owed SMO a duty of care and SMO can allege a negligence claim. (*Id.*)

### D. *SMO's allegations establish SunTrust's violation of the UCC*

SMO argues it adequately pled SunTrust's actual knowledge of the discrepancy between the beneficiary information and the account number on the April 23 Transfer request. (Doc. 7 at 16.) It points the Court to the *Petition* which states, "SunTrust upon receipt of the transfer order from Whitney had actual knowledge that the account number did not match the name(s) and address(es) on the accounts. Despite this actual knowledge, SunTrust accepted the wire transfer order and processed the April 23 Transfer." (*Id.* (citing Doc. 1 -2 at ¶ 15).) SMO asserts that the Court must accept the facts pled in the *Petition* as true and should deny SunTrust's *Motion* on this issue. (*Id.*)

3.  Defendant's reply

   A.  *SMO concedes that the EFTA is inapplicable*

SunTrust highlights that SMO concedes that the Electronic Fund Transfer Act "limits its

protections to 'consumers,' a defined term meaning 'natural persons.'" (Doc. 10 at 2 (citing

*Response,* Doc. 7 at 5, n.2).)

   B.  *No claim for "aiding fraud" exists under North Carolina law.*

SunTrust maintains that North Carolina law, like Louisiana law, does not recognize the

claim of "aiding fraud." (Doc. 10 at 3.) SunTrust details that "in *Yale v. Community One Bank,*

*N.A.*, the Western District of Louisiana dismissed plaintiffs' claim for aiding and abetting fraud

for failure to state a claim 'because '[n]o North Carolina state court has recognized a claim for

aiding and abetting fraud.'" (*Id.* at 3 (quoting *Yale*, 2016 WL 9753776, at *4 (citing *Branch*

*Banking and Trust Co. v. Lighthouse Fin. Corp.*, No. 04-1523, 2005 WL 1995410, at * 7 (N.C.

Super. Ct. July 13, 2005); *Bradshaw v. Maiden*, No. 14-14445, 2015 WL 4720387, at *14 (N.C.

Super. Ct. August 10, 2015)).) As such, SunTrust contends that SMO cannot state a claim for

aiding fraud under North Carolina law.

   C.  *SMO offers no authority for its argument that the UCC does not displace its*
       *negligence claims.*

SunTrust contends that SMO's argument that the UCC's Article 4A does not apply

because Article 4A "does not apply to a funds transfer any part of which is governed by the

Electronic Fund Transfer Act" contradicts its concession that the Electronic Funds Transfer Act

does not apply in this case. (Doc. 10 at 4.) Further, SunTrust urges that the comments to Article

4A-102 establish that the article applies to wire transfers like the one at issue in this case. (*Id.*)

SunTrust argues that SMO's negligence claims directly pertaining to the April 23

Transfer—"accepting the April 23 Transfer even though the name(s) and address(es) did not

match the SunTrust Account;" and "failing to freeze all funds because the names and addresses did not match the SunTrust account"—are addressed and preempted by the UCC. (*Id.*) Therefore, to the extent the negligence directly pertains to the April 23 Transfer, SunTrust maintains the negligence claim is displaced by Article 4A.  (*Id.*)

> D. *SMO's negligence claims fail because SunTrust owes no duty to SMO, a non-customer with which it has no relationship*

SunTrust contends that SMO's response—that SMO was SunTrust's customer and agent under the UCC—does not address whether SMO has pled a general negligence claim under either Louisiana or North Carolina law. (Doc. 10 at 5.) SunTrust maintains that in both jurisdictions, courts agree banks do not owe a duty of care to noncustomers with whom the bank has no direct relationship. (*Id.* at 5-6.) Distinguishing the case law relied on by SMO, SunTrust argues that the complaint in *Securities Fund Services, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 542 F. Supp. 323, 327 (N.D. Ill. 1982) included allegations that the beneficiary bank was an agent of the initiator bank and that there was a breach of the beneficiary bank's obligations as an agent. (*Id.* at 6.) In this case, however, there are no allegations in the *Petition* that SMO was SunTrust's customer or that there was a relationship that would give rise to a legal duty. (*Id.* at 7.) Therefore, SunTrust maintains that no duty of care was owed to SMO and the negligence claims necessarily fail. (*Id.*)

> E. *SMO's conclusory allegations are not sufficient to state a claim against SunTrust under the UCC*

Last, SunTrust argues that SMO cannot rely on its "general allegations of actual knowledge, without specific facts" in support of its claim. (Doc. 10 at 7.) SunTrust contends that these recitations are mere conclusory statements that should not survive a motion to dismiss. (*Id.* at 8.) Specifically, SunTrust asserts:

11

> SunTrust had no duty to determine whether there was a conflict between the
> beneficiary name and address on the wire transfer order and the beneficiary
> name and address associated with SunTrust account number […9929], a point that SMO
> does not dispute. SMO has not alleged in its Petition, inter alia, the circumstances
> under which SunTrust obtained knowledge concerning the purported conflict. At
> best, SMO's allegations support the inference that SunTrust may have had
> constructive knowledge of the mismatch (which is denied), which is insufficient to
> state a claim for misdescription under UCC Article 4A-207.

(*Id.* at 8.) As such, SunTrust maintains that it is appropriate to dismiss the UCC claims. (*Id.*)

b. *Analysis*

1. The Electronic Fund Transfer Act

The Court agrees with the parties that the Electronic Fund Transfer Act does not apply in

this case because the EFTA is limited to cases brought by "natural persons," which SMO is not.

15 U.S.C.A. § 1693a(6) ("the term 'consumer' means a natural person."); *Kashanchi v. Texas*

*Commerce Med. Bank, N.A.*, 703 F.2d 936, 938 (5th Cir. 1983) ("The Act defines a consumer as

'a natural person.'"). Therefore, Count II: Violations of the Electronic Fund Transfer Act, is

dismissed with prejudice.

2. Aiding Fraud under North Carolina Law

Plaintiff argues that although Louisiana law does not apply in this case, the Court should

apply North Carolina law to its claim for aiding fraud. Incongruously, Plaintiff then cites New

York state law for the elements of an aiding fraud claim. (Doc. 7 at 7 (citing *Anwar v. Fairfield*

*Greenwich Ltd.*, 728 F. Supp. 2d 372, 442 (S.D.N.Y. 2010)).) Plaintiff fails to cite North

Carolina law because it cannot; "[n]o North Carolina state court has recognized a claim for

aiding and abetting fraud." *Branch Banking and Trust Co. v. Lighthouse Financial Corp.*, No.

04-1523, 2005 WL 1995410 at *8 (N.C. Jul. 13, 2005); *Sompo Japan Ins. Inc. v. Deloitte &*

*Touche, LLP*, No. 03-5547, 2005 WL 1412741 at *1 (Jun. 10, 2005); *Bradshaw v. Maiden*, No.

14-14445, 2015 WL 4720387 at *14 (N.C. Aug. 10, 2015).  Additionally, "[t]here are no North

Carolina appellate court decisions directly recognizing a cause of action for aiding and abetting

fraud." *Sompo,* 2005 WL 1412741 at *1.  In *Sompo*, the court stated

> This Court cannot distinguish ... [a] claim [for aiding and abetting fraud] from a
> direct fraud claim. There must be direct knowledge and intent to defraud. If that is
> required, the claims are redundant.... If professionals such as accountants and
> lawyers could be held liable for fraud when their clients used their services to
> defraud a third party without the professionals' intent to participate in the fraud, the
> costs of such services would be prohibitive to all but the affluent. Such
> professionals would either have to incur the expense of investigation into how their
> services were being used or be placed in the position of insurers of their clients'
> honesty. Either burden would add an unacceptable cost to the provision of
> necessary and desirable services. Also, it seems illogical to impose liability for
> aiding and abetting fraud based upon a lower level of scienter than fraud itself. Nor
> would it be consistent with the cases in which the North Carolina courts have based
> joint liability on comparable culpability. Without knowledge and similar intent,
> there can be no joint effort or concert in action.

2005 WL 1412741 at *3. Given that the North Carolina state courts have not adopted a cause of

action for aiding fraud, this Court declines to recognize a new common law claim under North

Carolina state law. Therefore, Count IV: Aiding Fraud, is dismissed with prejudice for failure to

state a claim.

   3.   Whether SMO can state a claim for negligence under North Carolina law

      A.   *Whether Article 4A of the UCC preempts a common law claim for negligence as it
          pertains to the April 23 Transfer.*

      "Article 4A controls how electronic funds transfers are conducted and specifies certain

rights and duties related to the execution of such transactions. It calls for banks to adopt certain

security procedures (§§ 4–A–201, 202), controls the timing for executing payments (§ 4–A–

301), and assigns responsibility for reporting erroneous electronic debits (§§ 4–A–304, 505)."

*Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 89 (2d Cir. 2010). Every state in

the United States, except South Carolina, has adopted this provision of the UCC. *Thomas v.

Barclays Capital Inc.*, No. 18-0257, 2019 WL 113778 at *6 (W.D. La. 2019).  Therefore,

"parties whose conflict arises out of a funds transfer should look first and foremost to Article 4–

A for guidance in bringing and resolving their claims." *Sheerbonnet, Ltd. v. Am. Express Bank, Ltd.,* 951 F. Supp. 403, 407 (S.D.N.Y.1995). As such, Article 4A is "intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties *in any situation covered by particular provisions of the Article.*" *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274–75 (11th Cir. 2003) (citing U.C.C. § 4A–102 cmt.). As the Eleventh Circuit explains

> However, Article 4A is not the "exclusive means by which a plaintiff can seek to redress an alleged harm arising from a funds transfer." "The Article itself is replete with references to common law remedies." "[T]he Drafting Committee intended that Article 4A would be supplemented, enhanced, and in some places, [superseded] by other bodies of law ... the Article is intended to synergize with other legal doctrines." "The legislative intent reflected here is that carefully drafted provisions ... are not to be side-stepped when convenient by reference to other sources of law. But where the provisions do not venture, the claimant need not turn back; he or she may seek other guides, statutory or judicial. Therefore, the only restraint on a plaintiff is that "resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities *inconsistent* with those stated in this Article."

*Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274–75 (11th Cir. 2003) (internal citations omitted); *Rolle v. Branch Banking & Tr. Co.*, No. 13-60976-CIV, 2014 WL 11638588, at *6 (S.D. Fla. May 28, 2014) ("Because the claims presented in the proposed Second Amended Complaint are not based solely on the alleged wrongful wire transfers themselves, Rolle's proposed common-law claims are not preempted by [Article 4A]."); *Ducote v. Whitney National Bank*, 212 So. 3d 729, 736 (La. App. 5 Cir. 2/22/17) ("[Uniform Commercial Code (UCC)] preemption 'extends to displacement of other law that is inconsistent with the purposes and policies' of the UCC.") (citing La. R.S. 10:1-103, Comment 2).

In other words, whether Article 4A of the UCC displaces or preempts a plaintiff's non-UCC claims depends on the facts of the case. As the Southern District of Florida explains:

> The Article's stated purpose is to create "precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability ...." It specifically endorses clear bright-line rules, and rejects "broadly stated, flexible principles." Moreover, it intends for Courts to rely exclusively on

14

the carefully balanced duties and liabilities set forth in Article 4A, and to eschew any principles of law or equity outside of Article 4A when deciding cases that fall within the statute's ambit.

*Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, 352 F. Supp. 3d 1226, 1230–31 (S.D. Fla. 2018), *motion for relief from judgment denied,* No. 0:18-CV-60250-UU, 2019 WL 8164772 (S.D. Fla. Oct. 7, 2019), and *aff'd,* 795 F. App'x 741 (11th Cir. 2019) (internal citations omitted).

 "In cases where courts applied Art. 4A preemption to preclude other statutory and common law causes of action, they did so because the facts of the case or actions complained of fell squarely within the situations covered by Art. 4A." *Consorcio Indus. do Construccion Titanes, S.A. de C.V. v. Wells Fargo Bank, N.A.*, No. 10-2111, 2012 WL 13019678 at *3 (N.D. Tex. 2012) (citing *Community Bank, FSB v. Stevens Financial Corp.*, 966 F. Supp. 775 (N.D. Ind. 1997) (where bank has no knowledge that funds were transferred in error, set-off was proper and governed by Art. 4A); *Moody National Bank v. Texas City Development Ltd. Co.*, 46 S.W.3d 373, 378 (Tex. App. - Houston [1st Dist.] 2001, pet. denied) (where bank failed to give proper notice of wire transfer, negligence claim was preempted by Art. 4A); *Zengen, Inc. v. Comercia Bank*, 41 Cal. 4th 239, 158 P.3d 800, 809 (2007) (preemption applied because facts of case fell squarely within UCC provisions related to unauthorized wire transfers)).  First, a movant bank seeking preemption under UCC Article 4A bears the burden of proving that the account or accounts at issue are commercial accounts as opposed to consumer accounts. *Ducote*, 212 So. 3d at 731 (citation omitted).  Additionally, for a claim to be preempted by Article 4A, the claim must specifically arise out of the transfer of funds as opposed to other activities such as opening of the account. *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, at 223 (4th Cir. 2002).

Although Article 4A preempts negligence claims against financial institutions who are involved in the negligent transfer of funds, there are exceptions.  The Eleventh Circuit found that Article 4A was "silent with regard to claims based on . . . the theory that a beneficiary bank

accepted funds when it knew or should have known that the funds were fraudulently obtained."
*Gilson v. TD Bank, N.A.*, No. 10-20535, 2011 WL 294447 at *8 (citation omitted).  The court
continued by stating, "under the test that rights and liabilities not inconsistent with those set out
in Article 4A survive preemption, 'Article 4A does not preempt a state law claim if money is
transferred by wire to a party that knows or should have known that the funds were obtained
illegally.'" *Id.*

In this case, SMO alleges that SunTrust's negligent conduct includes:

a.  Negligently accepting the April 23 Transfer even though the name(s) and
address(es) did not match the SunTrust account;

b.  Negligently failing to freeze all funds because the names and addresses did not
match the SunTrust account;

 (Doc. 1-2 at 6.) These allegations fall squarely within the provisions of Article 4A of the UCC

as adopted by North Carolina, which provides in § 25-4A-207. Misdescription of beneficiary:

(b) If a payment order received by the beneficiary's bank identifies the beneficiary
both by name and by an identifying or bank account number and the name and
number identify different persons, the following rules apply:

. . . if the beneficiary's bank does not know that the name and number refer
to different persons, it may rely on the number as the proper identification
of the beneficiary of the order. The beneficiary's bank need not determine
whether the name and number refer to the same person.

N.C. Gen. Stat. Ann. § 25-4A-207. The rights and obligations of SunTrust concerning how the

wire transfer was conducted and the actions it was obligated to take as the beneficiary bank are

set forth in the UCC, and therefore SMO's negligence claims concerning the wire transfer itself

are preempted by Article 4A.

SMO also alleges other conduct by SunTrust that it alleges amounts to negligence,

including:

c.  Negligently failing to immediately return all funds after receiving notice of the
fraud from SMO;

16

d.  Negligently allowing fraudulent withdrawal(s) exceeding approximately $325,000;

e.  Negligently concealing information and/or refusing to provide information concerning the fraudulent withdrawal(s) to SMO, Whitney, and law enforcement, preventing any real possibility of recovery of the stolen funds;

f.  Negligently failing, prior to the fraudulent withdrawal(s), to take reasonable actions to investigate the circumstances at issue here, which demonstrated fraudulent activity;

g.  Negligently failing to train and instruct employees and staff to properly administer wire transfers with names and addresses that do not match the account information;

h.  Negligently failing to train and instruct employees and staff to refuse any withdrawal requests under circumstances such as the present exhibiting clear fraud upon or after being put on notice of said fraud;

i.  Negligently failing to train and instruct employees with regard to providing information to third parties, including the law enforcement, to prevent fraud and/or to recover stolen funds; and

j.  Negligently failing to implement policies and procedures to prevent this specific type of fraud after being put on notice of the Mississippi Action.

(Doc. 1-2 at 6-7.) Although the Court notes that these actions implicate the rights and obligations set forth in Article 4A, because these claims do not squarely fall within the UCC's ambit and are not inconsistent with the UCC, the Court finds that these negligence claims are not preempted by Article 4A. *See also Ducote v. Whitney National Bank*, 212 So. 3d 729, 736 (La. App. 5 Cir. 2/22/17) ("[Uniform Commercial Code (UCC)] preemption 'extends to displacement of other law that is inconsistent with the purposes and policies' of the UCC.") (citing La. R.S. 10:1-103, Comment 2).

      B.  <u>Whether SunTrust has a duty of care to SMO, a non-customer third party with no legal relationship.</u>

Defendant argues that SMO cannot state a claim for negligence because SMO is a non-customer third party. Defendant also argues that it does not have a legal relationship that could lead to a fiduciary duty or an agency relationship with SMO. Plaintiff argues it is owed a duty

17

under the definitions of Article 4A because SunTrust is an "agent" of Whitney bank and SMO

used Whitney bank to enact the transfer. The Court finds that SMO's arguments are misplaced.

As Article 4A states,

> A receiving bank is not the agent of the sender or beneficiary of the payment order
> it accepts, or of any other party to the funds transfer, and the bank owes no duty to
> any party to the funds transfer except as provided in this Article or by express
> agreement.

N.C. Gen. Stat. Ann. § 25-4A-212. Therefore, to the extent that SMO argues that Article 4A

creates an agency relationship with SunTrust, that argument is not supported by the statute.

Further, in *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 224–27 (4th Cir. 2002), the

Fourth Circuit considered whether under North Carolina law, a bank owes a duty of care to a

non-customer third party. The Fourth Circuit explained:

> Under North Carolina law, "[n]egligence is the failure to exercise proper care in the
> performance of a legal duty owed by a defendant to a plaintiff under the
> circumstances." *Cassell v. Collins*, 344 N.C. 160, 472 S.E.2d 770, 772 (1996). A
> necessary factor in proving negligence is the existence of a duty of care owed to
> the particular plaintiff by the defendant. *Pinnix v. Toomey*, 242 N.C. 358, 87 S.E.2d
> 893, 897 (1955) ("Actionable negligence presupposes the existence of a
> legal relationship between parties by which the injured party is owed a duty by the
> other, and such duty must be imposed by law."). We consider whether a bank owes
> a duty of care to a noncustomer who is defrauded by the bank's customer through
> use of its services. We cannot find an applicable precedent from a North Carolina
> court and look to case law from other jurisdictions. We conclude that the North
> Carolina Supreme Court, if it were to decide this issue, would hold that Wachovia
> did not owe Eisenberg a duty of care under the facts presented.
>
> Whether Wachovia owes a duty of care to Eisenberg depends on the relationship
> between them. *See* W. Page Keeton et al., *Prosser and Keeton on Torts* § 53 at 356
> (5th ed. 1984) ("It is better to reserve 'duty' for the problem of the relation between
> individuals which imposes upon one a legal obligation for the benefit of the other
> ...."); *cf. Newton v. New Hanover Co. Bd. of Educ.*, 342 N.C. 554, 467 S.E.2d 58,
> 63 (1996) (holding nature and scope of duty owed by owner of land depends upon
> status of injured person as invitee, licensee or trespasser). Eisenberg had no direct
> relationship with Wachovia. He was not a Wachovia bank customer and, so far as
> the allegations indicate, has never conducted business with Wachovia. Eisenberg
> instead transacted with Reid, a Wachovia bank customer.

Courts in numerous jurisdictions have held that a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship. *See Weil v. First Nat'l Bank of Castle Rock,* 983 P.2d 812, 815 (Colo.Ct.App.1999); *Volpe v. Fleet Nat'l Bank,* 710 A.2d 661, 664 (R.I.1998); *Miller–Rogaska, Inc. v. Bank One,* 931 S.W.2d 655, 664 (Tex.App.1996); *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.,* 49 Cal.App.4th 472, 56 Cal.Rptr.2d 756, 760–63 (1996); *Portage Aluminum Co. v. Kentwood Nat'l Bank,* 106 Mich.App. 290, 307 N.W.2d 761, 764–65 (1981); *Pa. Nat'l Turf Club, Inc. v. Bank of W. Jersey,* 158 N.J.Super. 196, 385 A.2d 932, 936 (1978); *Gesell v. First Nat'l City Bank,* 24 A.D.2d 424, 260 N.Y.S.2d 581, 581–82 (1965).

. . .

[I]t has been held that banks do not owe a duty of care to noncustomers even when the noncustomer is the person in whose name an account was fraudulently opened. In *Software Design* a financial consultant embezzled money from Software Design through a bank account he opened bearing the company name. 56 Cal.Rptr.2d at 759–60. The California Court of Appeal dismissed Software Design's negligence claim against the bank. *Id.* at 760–63. According to the court, "the primary flaw" in Software Design's negligence theory was the lack of a relationship between it and the bank. *Id.* at 760. Even though the bank account used to defraud Software Design bore its own name, the court held that a bank does not owe a duty of care to protect noncustomers against fraud. *Id.; see also Volpe,* 710 A.2d at 664 ("[A] bank is not liable in negligence to a noncustomer payee for having failed to ascertain whether a check paid by it bears the payee's genuine indorsement."). *But see Patrick v. Union State Bank,* 681 So.2d 1364, 1371 (Ala.1996) (holding bank owed duty of care to person in whose name account was opened to ensure that person opening account is not imposter).

Eisenberg was neither a Wachovia customer nor the person in whose name Reid's fraudulent bank account was opened. Bear Stearns would be the beneficiary of any duty of care which Wachovia might owe to a noncustomer. *See id.* Eisenberg instead falls into the undefined and unlimited category of strangers who might interact with Wachovia's bank customer. In *McCallum* the Massachusetts Superior Court noted that the maintenance of a bank account was intended to benefit the person who opened the account. *McCallum,* 1995 WL 1146812 at *3. The court reasoned that to extend a duty of care to strangers like Eisenberg would be contrary to the normal understanding of the purpose of a bank account and would expose banks to unlimited liability for unforeseeable frauds. *Id.*

Several other courts have relied on similar policy considerations in rejecting an argument that banks owe a duty to noncustomers. *See Software Design,* 56 Cal.Rptr.2d at 763 ("Better that the one contemplating the services of a financial advisor do the background check and then monitor the services. It is that person who has the most control and the most to win or lose, and with whom the investigative tasks should rest."); *Weil,* 983 P.2d at 814 ("It would be unreasonable to require banks to make an independent investigation of their customers' authority

to use any particular unregistered trade name; and a duty to inquire only of the customer would not prevent the kind of harm plaintiff suffered."); *Pa. Nat'l Turf Club,* 385 A.2d at 936 ("Plaintiff was the party who assumed the risk associated with that hazardous activity ... [and] cannot recoup by attempting to shift responsibility to the bank which had no relationship with it.").

We are persuaded by the reasoning articulated in the numerous cases holding that a bank does not owe noncustomers a duty of care. . . . We have no doubt that the North Carolina Supreme Court would reach a similar conclusion as that in *McCallum* and hold that Wachovia does not owe Eisenberg a duty of care.

A North Carolina Court of Appeals decision supports our view. In *Carlson v. Branch Banking & Trust Co.,* 123 N.C.App. 306, 473 S.E.2d 631 (1996), plaintiffs executed a $500,000 letter of credit to help fund a stockbroker's purchase of a mutual fund company. *Id.* at 632–34. Plaintiffs intended that the stockbroker would use the letter of credit to obtain a loan to be used solely for the contemplated purchase. *Id.* at 632–33. The stockbroker obtained a loan from the defendant bank but did not use the proceeds as intended. *Id.* at 634. When the stockbroker defaulted on the loan, the bank drew from plaintiffs' letter of credit. *Id.* Plaintiffs sued the bank, alleging a negligent failure to monitor the proper use of the loan proceeds. *Id.* The North Carolina Court of Appeals denied the negligence claim, holding that the bank did not owe plaintiffs a duty of care to monitor the disbursement of the loan proceeds. *Id.* at 636. The court reasoned that, absent a contractual obligation arising from the letter of credit itself, there was no relationship between the bank and the plaintiffs to give rise to a duty of care. *Id.* at 637. *Carlson* suggests that the North Carolina Court of Appeals would not find a duty of care in this case, where there was no direct relationship at all between Eisenberg and Wachovia, much less a contractual obligation.

*Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 224–27 (4th Cir. 2002); *see Bottom v. Bailey*, 238 N.C. App. 202, 207–08, 767 S.E. 2d 883, 887 (2014) (". . . a bank has no duty to anyone but its own customers, and that despite the fact that a bank account may have been used in the course of perpetrating a fraud, the bank's only duty was to its customers, not to those with whom its customers had dealings. . . .  In the instant case, we hold the precedent of *Eisenberg and Sterner* to be both controlling and persuasive. Morgan Stanley had no relationship with plaintiffs, and therefore owed them no duty. The trial court did not err in dismissing plaintiffs' claim of negligence with respect to Morgan Stanley.")

The Court agrees with the Fourth Circuit that SunTrust Bank owed no duty of care to SMO as a non-customer third-party. Further, there are no allegations that SunTrust owed any fiduciary duty to SMO such that a duty of care would be implied. Therefore, the allegations in the *Petition* are insufficient to state a claim for negligence because SMO cannot establish a duty of care that was breached by SunTrust. Because SMO does not establish a duty of care that SunTrust breached, the Court will dismiss Count I: Negligence and Gross Negligence without prejudice for failing to state a claim.

4.  Whether the *Petition* alleges sufficient facts to state a claim under the UCC

SunTrust asserts that SMO fails to state a claim under the UCC because it does not allege that SunTrust had either an obligation to determine if the wire transfer order information was correct, or that it had actual knowledge that the customer with the SunTrust Account # . . . 9929 was not the proper and intended recipient of the wire transfer. (Doc. 5-1 at 16.) SMO argues that the *Petition*'s factual allegations are sufficient to state a claim under the UCC. (Doc. 7 at 16.) SMO asserts that the Court must accept the facts pled in the *Petition* as true and should deny SunTrust's *Motion* on this issue. (*Id.*)

Article 4A-207 of the UCC[1] sets forth:

---

[1] The Court cites Louisiana law because the *Petition* cites to the Louisiana Revised Statutes. If Plaintiff intends to pursue the claim under North Carolina law, the Court notes that North Carolina law contains identical provisions to the Louisiana Revised Statutes. *See* N.C. Gen. Stat. Ann. § 25-4A-207 ("(b) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply: (1) Except as otherwise provided in subsection (c), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person. (2) If the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur."); N.C. Gen. Stat. Ann. § 25-1-202 (" 'Knowledge' means actual knowledge. 'Knows' has a corresponding meaning."); N.C. Gen. Stat. Ann. § 25-1-202 (f) Notice, knowledge, or a notice or notification received by an organization is effective for a particular transaction from the time it is brought to the attention of the individual conducting that transaction and, in any event, from the time it would have been brought to the individual's attention if the organization had exercised due diligence. An organization exercises due diligence if it maintains reasonable routines for communicating

(b) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:

(1) Except as otherwise provided in Subsection (c), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.

(2) If the beneficiary's bank pays the person identified by the name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.

La. R.S. 10:4A-207. Further, under the UCC, "'Knowledge' means actual knowledge. 'Knows'

has a corresponding meaning." La. R.S. 10:1-202. Further,

(f) Notice, knowledge, or a notice or notification received by an organization is effective for a particular transaction from the time it is brought to the attention of the individual conducting that transaction and, in any event, from the time it would have been brought to the individual's attention if the organization had exercised due diligence. An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines. Due diligence does not require an individual acting for the organization to communicate information unless the communication is part of the individual's regular duties or the individual has reason to know of the transaction and that the transaction would be materially affected by the information.

La. R.S. 10:1-202.

The *Petition* alleges "SunTrust upon receipt of the transfer order from Whitney had

actual knowledge that the account number did not match the name(s) and address(es) on the

accounts. Despite this actual knowledge, SunTrust accepted the wire transfer order and processed

the April 23 Transfer." (Doc. 1 -2 at ¶ 15.) SunTrust argues that the conclusory allegation of

---

significant information to the person conducting the transaction and there is reasonable compliance with the routines. Due diligence does not require an individual acting for the organization to communicate information unless the communication is part of the individual's regular duties or the individual has reason to know of the transaction and that the transaction would be materially affected by the information.").

"actual knowledge" is insufficient to state a claim that it violated its obligations under Article 4A

of the UCC, and that SMO must show how and why it had actual knowledge.

The Court does not agree with SunTrust. Taking the facts in the *Petition* as true and

making all inferences in favor of SMO, the *Petition* contains sufficient factual allegations to state

a claim for violation of Article 4A of the UCC. SunTrust's arguments that SMO must show how

knowledge was acquired and/or why SunTrust knew of the mismatch would hold SMO to a

heightened pleading standard that is not appropriate outside of allegations of fraud. Therefore,

the Court will not dismiss the allegations in Count III: Violation of the Uniform Commercial

Code.

5. Leave to amend

"[A] court ordinarily should not dismiss the complaint except after affording every

opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*,

220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to
> decide cases on the merits rather than on the sufficiency of pleadings, district courts
> often afford plaintiffs at least one opportunity to cure pleading deficiencies before
> dismissing a case, unless it is clear that the defects are incurable or the plaintiffs
> advise the court that they are unwilling or unable to amend in a manner that will
> avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Relying on *Great Plains* and other cases from this circuit, one district court in Texas articulated

the standard as follows:

> When a complaint fails to state a claim, the court should generally give the plaintiff
> at least one chance to amend before dismissing the action with prejudice unless it
> is clear that the defects in the complaint are incurable. *See Great Plains Trust Co.
> v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see
> also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403
> (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to
> grant leave to amend without a justification ... is considered an abuse of
> discretion.") (internal citation omitted). However, a court may deny leave to amend

a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed.1990) (footnote omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.") (footnote omitted).

*Tow v. Amegy Bank N.A.*, 498 B.R. 757, 765 (S.D. Tex. 2013). Finally, one leading treatise

explained:

> As the numerous case[s] ... make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed.

2016). Here, Plaintiff asks for leave to amend the *Petition* in the event the Court found

deficiencies; therefore, the Court will act in accordance with "wise judicial practice" and the

general rule and allow leave to amend.

<u>CONCLUSION</u>

Accordingly,

IT IS ORDERED that the *Motion to Dismiss* filed by SunTrust Bank (Doc. 5) is

GRANTED in part and DENIED in part;

IT IS FURTHER ORDERED that Count II: Violations of the Electronic Fund Transfer Act and Count IV: Aiding Fraud are DISMISSED WITH PREJUDICE;

IT IS FURTHER ORDERED that Count I: Negligence and Gross Negligence is DISMISSED WITHOUT PREJUIDCE;

IT IS FURTHER ORDERED that in all other respects the *Motion to Dismiss* is DENIED;

IT IS FURTHER ORDERED that Plaintiff, Squeeze Me Once, LLC may file an amended complaint within 28 days of entry of this *Ruling and Order*. If Plaintiff does not file an amended complaint within 28 days, the Court will dismiss the claims under Count I: Negligence and Gross Negligence with prejudice. Defendant is instructed to contact the Court if the 28-day period passes and Plaintiff has failed to file an amended complaint.

Signed in Baton Rouge, Louisiana, on August 3, 2020.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**