UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**SQUEEZE ME ONCE, LLC**                                     **CIVIL ACTION**

**VERSUS**                                                            **NO. 19-787-JWD-RLB**

**SUNTRUST BANK, ET AL.**

## ORDER

Before the Court is Plaintiff's Motion to Compel filed on April 30, 2021. (R. Doc. 30). The motion is opposed. (R. Doc. 33). Plaintiff filed a Reply. (R. Doc. 36).

**I.    Background**

This litigation, which was originally filed in state court, arises from a wire transfer dated April 23, 2019. (R. Doc. 1-2). Squeeze Me Once, LLC ("Plaintiff" or "SMO") alleges that it instructed its bank, Whitney Hancock ("Whitney") to wire $400,000 to an account at SunTrust Bank ("SunTrust" or "Defendant") supposedly held by Main Squeeze Juice Company Franchise, LLC ("MSJCF"). (R. Doc. 1-2 at 3-4). According to SMO, an unidentified foreign hacker gained access to its agent's email, intercepted the correct wire account instructions from MSJCF, and emailed a fraudulent SunTrust account number to SMO's agent for the April 23 wire transfer. (R. Doc. 1-2 at 4). SunTrust accepted the wire transfer and processed the April 23 wire transfer. (R. Doc. 1 at 5). SunTrust eventually returned $73,787.93 of the April 23 wire transfer to SMO. (R. Doc. 1 at 21).

In its Petition, SMO alleged the following four causes of action against SunTrust: (1) negligence and gross negligence; (2) violations of the Electronic Fund Transfers Act; (3) violations of the Uniform Commercial Code ("UCC"), including La. R.S. § 10:4A-207 (Misdescription of Beneficiary); and (4) aiding fraud. (R. Doc. 1-2 at 6-9). After removal, the

district judge dismissed all of these claims with prejudice, with the exception of the alleged violations of Article 4A of the UCC. (R. Docs. 23, 24).

Through the instant Motion to Compel, SMO seeks an order (1) compelling SunTrust to produce policies or procedures in response to SMO's Request for Production No. 1, and (2) compelling SunTrust to produce a corporate representative who can properly testify on the meaning of a certain field in the wire transfer history produced by SunTrust. (R. Doc. 30). In opposition, SunTrust argues that (1) the request for policies and procedures manuals is overly broad and seeks irrelevant and privileged information, and (2) the deposition-related issue has been rendered moot in light of supplemental corporate testimony provided on May 14, 2021. (R. Doc. 33).

## II.    Law and Analysis

### A.    Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii)

the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

### B. Analysis

#### 1. SMO's Request for Policies and Procedures

SMO's Request for Production No. 1 seeks the production of "SunTrust's policies and procedures that were both: (1) in place on April 23, 2019 and (2) related to Anti-Money Laundering ("AML"), Know Your Customer, and/or Bank Secrecy Act ("BSA") requirements or regulations. (R. Doc. 30-2 at 6). SunTrust objected to this request as "vague, overly broad, and unduly burdensome" because a full response "would require [SunTrust] to produce nearly every banking policy/procedure it has in place and would encompass documents that are wholly irrelevant to SMO's only remaining claim under the UCC." (R. Doc. 30-2 at 6).

SMO argues that the policies and procedures are relevant because they "would tend to prove SunTrust's knowledge" without identifying whether such knowledge would be actual or constructive. (R. Doc. 30-1 at 5-6). SMO represents that it seeks this "documentation because it would show SunTrust's practices regarding the review of wire transactions to guard against fraud and other financial crimes; for example, it likely would reveal when a wire would trigger

3

SunTrust's automated program for BSA/AML compliance causing the wire to be reviewed by a member of SunTrust's BSA/AML team as well as the timing of such review." (R. Doc. 30-1 at 3). SMO argues that this information is relevant because "policies or procedures would reveal what kind of wire activity would be reviewed by SunTrust's BSA/AML department and when, which would all go toward SunTrust's knowledge of the mismatch." (R. Doc. 30-1 at 6).

The problem is that SMO does not establish that these policies and procedures have any relevance with respect to SunTrust's actual knowledge of a mismatch prior to completing the wire transfer. In allowing SMO's claim under Article 4A of the UCC to move forward, the district judge found that under either Louisiana law (La. R.S. 10:4A-207, 10:1-202) or North Carolina law (N.C. Gen Stat. Ann. §§ 25-4A-207, 25-1-202), the alleged violation requires actual knowledge (as opposed to constructive knowledge) by the beneficiary bank that the name and number on the wire transfer order identifies different persons. (R. Doc. 23 at 21-22). The district judge found that SMO sufficiently alleged a claim under Article 4A of the UCC in light of the following allegation: "SunTrust upon receipt of the transfer order from Whitney had **actual knowledge** that the account number did not match the name(s) and address(es) on the accounts. Despite this **actual knowledge**, SunTrust accepted the wire transfer order and processed the April 23 Transfer." (R. Doc. 23 at 22-23) (quoting R. Doc. 1-2 at 4) (emphasis added in this Order). In other words, the district judge has made it clear that SMO must prove actual knowledge to succeed on its remaining claim under Article 4A of the UCC.[1]

---

[1] SMO also alleged more broadly that "SunTrust as the beneficiary bank at all relevant times . . . had **actual and constructive knowledge** that the name and address identified by SMO and Whitney on the wire transfer orders (i.e., MSJCF) did not match the name and address of the SunTrust customer corresponding to SunTrust Account # . . . 992." (R. Doc. 1-2 at 8) (emphasis added). As discussed in the district judge's ruling, however, only "actual knowledge" is relevant with respect to a claim under Article 4A of the UCC. (*See* R. Doc. 23 at 21-23)

4

There is no dispute that banks "generally use automated systems to filter wire activity and flag suspicious activity for review by employees knowledgeable in BSA/AML." (R. Doc. 30-1 at 6). Consistent with the foregoing, SunTrust produced a Wire Operations Data Entry Group Procedure that expressly states: "Incoming wires from other banks should process directly to the client's account. However, there are instances when MTS[2] is unable to successfully map those wires into the standard format. This results in the wires stopping in the Repair Queue for further processing." (R. Doc. 32-3 at 3). SunTrust represents that its deposition testimony establishes there was, in fact, no human intervention in the automatic wire process with respect to the wire at issue:

> (1) the April 23, 2019 wire transfer was processed utilizing a fully automated system; (2) the wire was received from Whitney by the SunTrust wire system at 2:46 p.m.; (3) the funds were credited to the SunTrust Account at 2:47 p.m.; (4) the wire was paid based on the account number; (4) the wire was a "straight through" wire, meaning that the wire did not stop in the "repair queue" due to, for example, the wire being in an improper format; (5) because the wire did not stop in the "repair queue," there was no manual intervention/review by a SunTrust "teammate" in the wire operations department prior to processing the wire transfer order; (5) had the wire stopped in the "repair queue," the wire would have been reviewed by a SunTrust "teammate" to confirm whether the name and account number matched the name and account number on the wire transfer order; (6) there was no comparison of the name and account number because the wire did not stop in the "repair queue;" and (7) nothing on the "History Detail" indicates that the wire should have stopped in the "repair queue" for further processing.

(R. Doc. 33 at 4) (citing R. Doc. 33-1). SMO has presented no information or documentation obtained in discovery indicating that any manual review of the wire transfer at issue prior to the completion of the transaction.

It appears, therefore, that SMO is solely seeking additional policies and manuals for the purpose of determining whether SunTrust had constructive knowledge of the discrepancy because it failed to properly follow policies and procedures triggering a manual review.

---

[2] MTS is the automated system used by SunTrust with respect to wire transfers.

5

Discovery with respect to constructive knowledge is irrelevant to SMO's remaining claim under Article 4A of the UCC. *See Langston & Langston, PLLC v. SunTrust Bank*, No. 18-741, 2020 WL 4907220, at *4 (S.D. Miss. Aug. 20, 2020) ("SunTrust has a fully automated system, and the time between receipt of the payment order from BankPlus and actual payment to Hopkins's account was only one minute. Data stored in a computer system does not constitute actual knowledge, even if inspection of the data would have revealed a misdescription.") (citing *Wetherill v. Bank IV, Kansas, N.A.*, 145 F.3d 1187, 1192 (10th Cir. 1998)); *see also El Camino Res., LTD. v. Huntington Nat. Bank*, 722 F. Supp. 2d 875, 924 (W.D. Mich. 2010) (rejecting arguments that "red flags" should have been disseminated to AML/BSA personnel for appropriate action because they "do nothing to provide actual knowledge, but assert only what the Bank should have known had it fulfilled its duties of investigation.").

In reply, SMO argues that the policies and procedures it is seeking are relevant for determining whether "a SunTrust BSA/ALM analyst [as opposed to an individual in SunTrust's wire department] reviewed the wire transaction in question and had knowledge of the misdescription that is the subject of SMO's claim." (R. Doc. 36 at 3). It appears that SMO is arguing that if the policies and procedures require a SunTrust BSA/ALM analyst to review the wire, then they would be evidence that such a review actually occurred. (R. Doc. 36 at 3-4). At most, however, the policies and procedures would establish the existence of a duty relevant to a negligent claim, not actual knowledge relevant to the remaining UCC claim.[3]

---

[3] It is unclear, however, whether and to what extent SMO has sought and obtained any written discovery relevant to the issue of whether a SunTrust BSA/ALM analyst (or any other SunTrust individual), in fact, reviewed the wire prior to the completion of the wire transaction. SMO has had the opportunity to question SunTrust on this issue at its Rule 30(b)(6) deposition. It is unclear whether SMO has sought any written admissions with respect to SunTrust's actual knowledge of the discrepancy prior to completion of the wire transfer.

Based on the foregoing, the Court agrees with SunTrust that the request seeks irrelevant information with respect to the remaining UCC claim and will deny Plaintiff's Motion to Compel with respect to this issue. The Court need not address SunTrust's remaining objections based on vagueness or overbreadth, or whether the policies or procedures sought fall under the Suspicious Activity Report ("SAR") privilege under the BSA.

### 2. SunTrust's Supplemental Deposition Testimony

Rule 30(b)(6) governs deposition notices directed to organizations. In the deposition notice, the party "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). In response, the organization must designate an agent or other person to testify on its behalf "about information known or reasonably available to the organization." *Id*. "The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006).

The notice for SunTrust's Rule 30(b)(6) deposition included as a topic the meaning of all fields listed in the produced wire transfer record, including the field "AUTOTRIEVE ADR V NAME & ADDRESS – CDT ACCT." (R. Doc. 30-3 at 4). SunTrust did not specifically object to this topic. (*See* R Doc. 30-4). SunTrust's designated representative was unable to testify as to the meaning of this specific field, and identified two individuals on her team who would know the meaning. (R. Doc. 30-5 at 12-14).

Based on the foregoing, the Court finds it appropriate to compel SunTrust to provide additional corporate testimony on this specific noticed topic. *See* Fed. R. Civ. P. 37(a)(3)(B)(i)-

7

(ii). That said, SMO represents in its Rule 37(a)(1) certificate that the parties were "continuing to try to resolve their dispute" with respect to supplemental deposition testimony when SMO filed the Motion to Compel on April 30, 2021 to meet the discovery deadline. Furthermore, SunTrust represents that it provided supplemental corporate testimony on May 14, 2021 on the topic. (R. Doc. 33 at 5 n.2). SMO's reply memorandum states that this specific issue is now moot. (R. Doc. 34 at 6).

Accordingly, while the Court will grant SMO's motion with respect to this issue, the Court will not order an appearance for a supplemental corporate deposition because the sought relief has been obtained.

### III.    Conclusion

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion to Compel (R Doc. 30) is **GRANTED IN PART and DENIED IN PART** consistent with the body of this Order. The parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on June 10, 2021.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**