## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**SQUEEZE ME ONCE, LLC**

**VERSUS**

**SUNTRUST BANK, ET AL.**

**CIVIL ACTION**

**NO. 19-787-JWD-RLB**

### RULING AND ORDER ON
### MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION

This matter comes before the Court on the *Motion for Summary Judgment* (Doc. 45) brought by Defendant SunTrust Bank ("SunTrust" or "Defendant"). It is opposed by Plaintiff Squeeze Me Once, LLC ("SMO" or "Plaintiff"). (Doc. 47.) SunTrust filed a reply brief. (Doc. 48.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule.

This case is about a fraudulent wire transfer. On April 23, 2019, SunTrust attempted to effectuate a wire transfer on behalf of SMO, but a hacker had provided false instructions to SunTrust. Consequently, there was a misdescription (that is, the transferee's account number did not match its account name), and a large sum of SMO's money went to the hacker.

SMO originally filed suit against SunTrust asserting a number of claims. However, all have been dismissed except the one arising from the Uniform Commercial Code ("UCC").

SunTrust' now moves for summary judgment on that claim. SunTrust argues it did not violate the UCC (specifically La. R.S. § 10:4A-207) because it did not have actual knowledge that the wire transfer at issue misdescribed the beneficiary prior to payment of the wire transfer as contemplated by that statute.

Jury

In sum, the Court finds that SunTrust is entitled to summary judgment. Even construing the evidence in a light most favorable to SMO and drawing reasonable inferences in its favor, no reasonable juror could find that SunTrust had actual knowledge of the misdescription. Consequently, SunTrust's motion will be granted, and SMO's remaining claim against SunTrust will be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

### A.  *Relevant Factual Background about the Wire Transfer*

On April 23, 2019, plaintiff SMO authorized Hancock Whitney Bank ("Whitney") to wire $400,000 to Main Squeeze Juice Company Franchise, L.L.C. ("MSJCF"). (Statement of Uncontested Material Facts in Support of Motion for Summary Judgment by SunTrust Bank ("SUMF"), Doc. 45-2 at ¶ 1; *See* Plaintiff's Opposing Statement of Material Facts ("POSMF"), Doc. 47-1 at ¶ 1.)[1] SMO presented Whitney a wire transfer order that identified the beneficiary as MSJCF and reflected that the funds should be deposited into SunTrust account number […9929] ("SunTrust Account"). (SUMF, Doc. 45-2 at ¶ 2; *See* POSMF, Doc. 47-1 at ¶ 2.) That same day, Whitney, following the instructions provided by SMO, initiated a wire transfer to SunTrust. (SUMF, Doc. 45-2 at ¶ 3; *See* POSMF, Doc. 47-1 at ¶ 3.) The SunTrust wire system received the wire from Whitney on April 23, 2019, at 2:46 p.m. (SUMF, Doc. 45-2 at ¶ 4; *See* POSMF, Doc. 47-1 at ¶ 4.)

SunTrust's "Wire Operations Data Entry Group Procedure" manual provides that "incoming wires from other banks should process directly to the client's account" unless the MTS

---

[1] This fact and many others in the SUMF are uncontested in the POSMF. As a result, under M.D. La. LR 56(f), the Court can deem these facts admitted. (*Id.*) ("Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."). While the Court may deviate from strict enforcement of this rule when SunTrust's assertions in its SUMF are contradicted by other summary judgment evidence in the record, *see Smith v. Brenoettsy*, 158 F.3d 908, 910 n.2 (5th Cir. 1998), here, the facts relevant to the Court's decision are largely uncontroversial and unrebutted.

("Money Transfer System") "is unable to successfully map those incoming messages into the standard format," which "results in the wires stopping in the Repair Queue for further processing." (SUMF, Doc. 45-2 at ¶ 7; *See* POSMF, Doc. 47-1 at ¶ 7.) The April 23, 2019, wire did not stop in the "repair queue" due to any issues with the format of the wire. (SUMF, Doc. 45-2 at ¶ 8; *See* POSMF, Doc. 47-1 at ¶ 8.) Further, nothing on the "History Detail" indicates that the wire should have stopped in the repair queue for further processing. (SUMF, Doc. 45-2 at ¶ 12; *See* POSMF, Doc. 47-1 at ¶ 12.) Under SunTrust's policies and procedures, had the wire stopped in the repair queue, the wire should have been manually reviewed to confirm whether the name and account number matched the name and account number on the wire transfer order. (SUMF, Doc. 45-2 at ¶ 10; *See* POSMF, Doc. 47-1 at ¶ 10.) Because the wire did not stop in the repair queue, there was no manual intervention/review by anyone at SunTrust prior to processing the wire transfer order. (SUMF, Doc. 45-2 at ¶ 9; *See* POSMF, Doc. 47-1 at ¶ 9.)

On or around May 9, 2019, SMO learned for the first time that MSJCF had not received SMO's payment. (SUMF, Doc. 45-2 at ¶ 13; *See* POSMF, Doc. 47-1 at ¶ 13.) SMO claims, "[on] information and belief," that "an unidentified foreign hacker gained access to [MSJCF's] email, intercepted the correct wire account instructions from MSJCF, and emailed fraudulent SunTrust account numbers to SMO" for the April 23, 2019, wire transfer. (SUMF, Doc. 45-2 at ¶ 14; *See* POSMF, Doc. 47-1 at ¶ 14.)

On May 9, 2019, SunTrust received a "Uniform Identification Agreement" from Whitney. (SUMF, Doc. 45-2 at ¶ 15; *See* POSMF, Doc. 47-1 at ¶ 15.) At the time SunTrust received the Uniform Identification Agreement from Whitney, the majority of the $400,000 wired by Whitney at the direction of SMO had been withdrawn from the SunTrust Account. (SUMF, Doc. 45-2 at ¶ 16; *See* POSMF, Doc. 47-1 at ¶ 16.) SunTrust subsequently issued a check dated May 28, 2019,

in the amount of $73,787.93 to Whitney, representing the portion of the funds that remained in the SunTrust Account. (SUMF, Doc. 45-2 at ¶ 17; *See* POSMF, Doc. 47-1 at ¶ 17.)

SMO filed this suit against SunTrust alleging (1) negligence and gross negligence; (2) violations of the Electronic Fund Transfer Act, 15 U.S.C. §§ 1693–1693r; (3) violation of the UCC, including but not limited to La. R.S. § 10:4A-207; and (4) aiding fraud. (Doc. 1-2.) On August 3, 2020, this Court granted SunTrust's Motion to Dismiss in part, dismissing all of SMO's claims except the one arising under the UCC. (Doc. 23.)

SunTrust's Motion for Summary Judgment asks this Court to find that it did not violate the UCC, specifically La. R.S. § 10:4A-207. (Doc. 45-1 at 1.) SunTrust asserts that it did not have actual knowledge that the April 23, 2019, wire transfer at issue misdescribed the beneficiary prior to payment of the wire transfer as contemplated by § 10:4A-207 (*Id.*)

### B.  *Disputed Factual Background about SunTrust's Automated Systems*

The parties write a great deal about SunTrust's automated systems, and the Court has thoroughly reviewed all of this testimony and evidence.  However, as will be explained below, details and possible factual disputes about these systems are immaterial to this Court's decision.

Nevertheless, to briefly summarize, Defendant asserts that relying on the SunTrust Account number provided to it by Whitney, at 2:47 p.m., SunTrust's fully automated systems credited the funds to the SunTrust Account and made them immediately available for withdrawal by the SunTrust Account holder. (*See* Dyson Dep. 123–24, Doc. 45-4.)  Defendant further asserts that the Karen Dyson deposition also supports the proposition that the April 23, 2019, wire was paid based on the account number only and was processed directly into the SunTrust Account. (*See* Dyson Dep. 93, Doc. 45-4.)

In response, Plaintiff contends that before crediting the SunTrust Account, SunTrust's systems validated the details of the incoming wire transfer dated April 23, 2019, from SMO to the SunTrust Account using the information that SunTrust maintains in its "host" or "mainframe" or "DDA" or "QBIQ" system. (*See* Pl. Ex. 1, Doc. 45-3; Watson Dep. 11, 13–14, 21–23, 27, Doc. 47-6). Thus, such information included not only the SunTrust Account number but the name of the SunTrust Account holder. (*See* Pl. Ex. 1, Doc. 45-3; Watson Dep. 11, 13–14, 21–23, 27, Doc. 47-6).

In reply, Defendant asserts that SunTrust's corporate representatives have testified to the fact that validation of the account number and name by way of manual intervention would have occurred if and only if the wire stopped in the repair queue due to issues with the format wire, which did not occur in the present case. (*See* Dyson Dep. 48, Doc. 45-4; Watson Dep. 31–32, Doc. 48-1.) SunTrust also refers to Stephanie Watson's testimony regarding the meaning of Autotrieve and the significance of related entries on the Automated "History Detail." (*See* Watson Dep. 11–13, 19, 28–32, Doc. 48-1.)

## III.   RULE 56 STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air*

*Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## IV.    ARGUMENTS OF THE PARTIES

All parties agree that the April 23, 2019, wire transfer was processed utilizing a fully automated system and that Louisiana's adoption of UCC § 4A-207 through La. R.S. § 10:4A-207 governs wire transfer liability for a misdescription of a beneficiary:

> (b) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:
>
> > (1) Except as otherwise provided in Subsection (c), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.
> >
> > (2) If the beneficiary's bank pays the person identified by the name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.

La. R.S. § 10:4A-207; *See also* Memorandum in Support of Motion for Summary Judgment

("*Mem. Supp. MSJ*"), Doc. 45-1 at 5; Plaintiff's Memorandum in Opposition to Defendant SunTrust Bank's Motion for Summary Judgment ("*Opp'n*"), Doc. 47 at 6–7.) The parties further agree that La. R.S. § 10:1-202 defines knowledge as actual knowledge. (*Mem. Supp. MSJ*, Doc. 45-1 at 5; *Opp'n*, Doc. 47 at 7.) Knowledge is determined at the time of payment, and La. R.S. § 10:4A-405(a)(iii) provides that payment occurs when "funds with respect to the order are otherwise made available to the beneficiary by the bank." *Id.*

### A.  Argument of SunTrust

SunTrust's Motion for Summary Judgment asks this Court to find that it did not violate the UCC, specifically La. R.S. § 10:4A-207. (*Mem. Supp. MSJ*, Doc. 45-1 at 1.) In its *Memorandum in Support of Motion for Summary Judgment*, SunTrust contends that since manual handling of a payment is both subject to human error and expensive, the benefits of automated payment are lost if a duty to make this determination is imposed on the beneficiary's bank. (*Id.* at 5.) Thus, it cannot be liable under La. R.S. § 10:4A-207 unless it had actual knowledge prior to payment that there was a misdescription of a beneficiary (*Id.* at 6.) Accordingly, payment occurred at 2:47 p.m., and the earliest that SunTrust can be shown to have had actual knowledge of the conflict would be two weeks after the wire transfer when SMO first learned of the conflict and notified Whitney, who in turn notified SunTrust. (*Id.*)

### 1. Payment Occurred When Funds Were Credited and Available

SunTrust asserts that there is no Louisiana or Fifth Circuit jurisprudence interpreting La. R.S. § 10:4A-405(a)(iii)'s language that payment occurs when "funds with respect to the order are otherwise made available to the beneficiary by the bank." (*Id.*) However, La. R.S. § 10:4A-405(a)(iii)'s language tracks that of UCC § 4A-405(a). (*Id.*) The Tenth Circuit has held that under UCC § 4A-405(a), payment of a wire transfer occurs when a beneficiary's account is credited by

the bank and the funds transferred are immediately made available to the beneficiary. (*Id.*) Thus, SunTrust argues that this Court should look to the Tenth Circuit's interpretation of UCC § 4A-405(a) given the lack of jurisprudence interpretating La. R.S. § 10:4A-405(a)(iii). (*Id.* at 6–7.)

In applying the Tenth Circuit's rationale, SunTrust argues that payment occurred at 2:47 p.m. (*Id.* at 7.) Each wire transfer creates a history detail that documents every process the wire is subjected to from the time it is received by SunTrust until the time it posted to the subject account. (*Id.*) The "History Detail" for the April 23, 2019, wire transfer reflects that SunTrust accepted the wire transfer at 2:46 p.m. (*Id.* at 7.) The "History Detail" also reflects that the funds were credited and made available to the SunTrust Account for withdrawal at 2:47 p.m. (*Id.*) Therefore, payment occurred at 2:47 p.m. (*Id.* at 8.)

### 2. No Actual Knowledge Prior to Payment

SunTrust argues that SMO's allegation that SunTrust had "actual and constructive knowledge" of the misdescription "prior to, contemporaneous with, and subsequent to" accepting the wire transfer" reflects both its misunderstanding of how fully automated systems work and its misinterpretation of La. R.S. § 10:4A-207, which requires actual rather than constructive knowledge. (*Id.*) SunTrust cites to its "Wire Operations Data Entry Group Procedure" manual, which states: "[i]ncoming wires from other banks should process directly to the client's account. However, there are instances when [the] Money Transfer System is unable to successfully map those incoming messages into the standard format. This results in the wires stopping in the Repair Queue for further processing." (*Id.*) The bank asserts that its corporate representatives testified to the fact that the wire was paid based on the account number only and was processed directly into the SunTrust Account. (*Id.* at 8–9.)  Thus, since the wire did not stop in the repair queue, it did not receive manual intervention or review to compare the name to the account number. (*Id.* at 9.)

8

SunTrust goes on to discuss *Langston & Langston, PLLC v. SunTrust Bank*, a case SMO cited to in its Petition alleging the case concerned the "same fraud" of the present case. (*Id.*) In *Langston*, the United States District Court for the Southern District of Mississippi entered a ruling granting SunTrust's motion for summary judgment. *Langston & Langston, PLLC v. SunTrust Bank*, 480 F. Supp. 3d 737 (S.D. Miss. 2020). In its *Memorandum in Support of Motion for Summary Judgment*, SunTrust contends that the court in *Langston* granted the motion for the following reasons: (1) SunTrust had a fully automated system; (2) the plaintiff failed to provide evidence that within one minute between the 12:01 p.m. acceptance and 12:02 p.m., SunTrust acquired actual knowledge of the misdescription; and (3) the earliest that "actual knowledge" of the conflict could be imputed to SunTrust was at 2:42 p.m. that same day when the originating bank transmitted a notice to SunTrust of suspected fraud. (*Mem. Supp. MSJ*, Doc. 45-1 at 9.) In applying the *Langston* rationale to the present case, SunTrust argues that SMO cannot show that SunTrust acquired actual knowledge of the conflict between the 2:46 p.m. acceptance and 2:47 p.m. payment, and the earliest that actual knowledge could be imputed to SunTrust would be May 9, 2019, two weeks after the April 23, 2019, wire transfer when SMO first learned of the conflict and notified Whitney who then contacted SunTrust. (*Id.* at 9–10.)

Therefore, since payment occurred at 2:47 p.m. and SunTrust did not have actual knowledge until two weeks after the wire transfer when Whitney notified SunTrust, SunTrust asserts that it did not have actual knowledge of the misdescription at the time of payment as required for liability under La. R.S. § 10:4A-207. (*Id.* at 10.)

### B.   *Arguments of SMO*

In its *Memorandum in Opposition to Defendant SunTrust Bank's Motion for Summary Judgment*, SMO contends that defendant's arguments are without merit. (*Opp'n*, Doc. 47 at 1.)

SMO asserts that "when the beneficiary's bank knows that there is a conflict between the name and number provided but proceeds with payment to the incorrect person, the beneficiary's bank takes the loss." (*Id.* at 7 (citing *Langston*, 480 F. Supp. 3d at 743).) Thus, SunTrust is liable under La. R.S. § 10:4A-207 for $326,212.07—the portion of the transferred funds withdrawn before Whitney issued its hold harmless request—because it had actual knowledge of the misdescription of the beneficiary and failed to reject the wire in light of such misdescription. (*Id.*)

To support its argument that SunTrust had actual knowledge, SMO asserts that SunTrust's documents and corporate testimony reveal that SunTrust's automated systems are designed to communicate with each other when processing incoming wires, including the targeting and sharing of not only the account number but also the identity of the account holder. (*Id.* at 8.) The Wire Transfer record that SunTrust produced in this action reveals that its Autotrieve function targeted both the beneficiary account and name in validating the wire transfer details. (*Id.*) SMO specifically cites to the testimony of a SunTrust corporate representative for the proposition that communications between SunTrust's wire transfer system, which would include all wire details including the intended beneficiary, and its DDA system are designed to disclose both the beneficiary account number and account holder before applying payment. (*Id.*)

In its opposition memorandum, SMO also responds to SunTrust's analogy to *Langston*. (*Id.* at 9.) SMO argues that by SunTrust analogizing *Langston* to the instant case, SunTrust ignored that its systems were specifically designed to target and share not only account numbers but beneficiary names in validating wire transactions, which its corporate representative confirmed occurred with the wire transfer. (*Id.*) SunTrust's decision to design its systems to operate in this fashion or to use systems so designed prevents the resulting knowledge from amounting to no more

10

than mere pieces of information stored on a system. (*Id.*) Thus, the present case is distinguishable from *Langston*, which did not address this feature of SunTrust's systems.

Therefore, SunTrust is liable under La. R.S. § 10:4A-207 because it had actual knowledge of the misdescription yet failed to reject the wire. (*Id.* at 9–10.)

### C.  SunTrust's Reply to SMO's Opposition

In its *Reply Memorandum in Further Support of Motion for Summary Judgment* ("*Reply*"), SunTrust reurges two arguments that it made in its *Memorandum in Support of Motion for Summary Judgment*: (1) SMO misunderstands how SunTrust's fully automated systems work; and (2) SMO misinterprets La. R.S. § 10:4A-207 to require constructive rather than actual knowledge. (*Reply*, Doc. 48.)

#### 1. SMO's Misunderstanding of How SunTrust's Fully Automated Systems Work

As established by the testimony of SunTrust's corporate representatives, validation of the account number and name by way of manual intervention would have occurred if and only if the wire stopped in the repair queue due to issues with the format of the wire, which did not occur here. (*Id.* at 2.) Accordingly, it was entirely proper for SunTrust to pay the wire based on the account number only, consistent with La. R.S. § 10:4A-207(b)(1), which states that a beneficiary bank "may rely on the number as the proper identification of the beneficiary of the order" and "need not determine whether the name and number refer to the same person." (*Id.*) Ms. Watson testified at length regarding the meaning of Autotrieve and the significance of related entries on the Automated "History Detail:" Autotrieve, short for automatic retrieval, represents a communication between SunTrust's wire transfer system and its DDA system (also referred to as the "host system"). (*Id.* at 2–3.) This communication is "systematic" and involves no manual intervention. (*Id.* at 3.) Based on Ms. Watson's testimony and the "History Detail," SunTrust

contends that it is clear that the wire was paid based on the account number only, and that there was no comparison of the account name and number. (*Id.* at 2–5.)

> ## 2. SMO's Misinterpretation of La. R.S. § 10:4A-207's Actual Knowledge Standard

In response to SMO's argument that SunTrust had knowledge of the conflict prior to payment because it "possessed and sought out" information that should have alerted it to the conflict because SunTrust's systems "were specifically designed to share not only account number but beneficiary name in validating wire transactions," SunTrust argues that such knowledge, at best, constitutes constructive knowledge, which is not actionable under La. R.S. § 10:4A-207. (*Id.* at 5–6.) SunTrust asserts that "know" is defined in La. R.S. § 10:1-202 as "actual knowledge." (*Id.* at 6.) Further, the United States Supreme Court has drawn a distinction between actual and constructive knowledge, explaining that both legal and non-legal dictionaries define "actual knowledge" as "real knowledge distinguished from presumed knowledge or knowledge imputed to one." (*Id.*) Thus, SunTrust draws the conclusion that "to have 'actual knowledge' of a piece of information, one must in fact be aware of it." (*Id.*)

SunTrust goes on to address the determination of actual knowledge in the context of automated systems for wire transfers. (*Id.*) Specifically, SunTrust cites to *Peter E. Shapiro, P.A., v. Wells Fargo Bank, N.A.*, in which the United States District Court for the Southern District of Florida held that "possible name mismatch" information that is "stored within a bank's computer system does not create actual knowledge or a duty to investigate." (*Id.* (citing *Peter E. Shapiro, P.A., v. Wells Fargo Bank, N.A.*, 352 F. Supp. 3d 1226, 1232–33 (S.D. Fla. 2018)).) SunTrust points out that in coming to this determination, the Southern District of Florida cited to *Wetherill v. Bank IV Kansas, N.A.*, in which the United States Court of Appeals for the Tenth Circuit held that data stored in a computer system, which if inspected would have revealed wrongdoing, was

not actual knowledge. (*Id.* (citing *Wetherill v. Bank IV Kan., N.A.*, 145 F.3d 1187, 1192 (10th Cir. 1998)).) In applying the Southern District of Florida and Tenth Circuit's rationales, SunTrust asserts that SMO's opposition confirms that the earliest that actual knowledge could be imputed to SunTrust is May 9, 2019, two weeks after the April 23, 2019, transfer, when "Whitney contacted SunTrust on Mr. Kirshman and SMO's behalf and submitted a hold harmless request to SunTrust seeking to have it return the $400,000 or whatever remained of that amount in the SunTrust account." (*Id.* at 6–7.)

SunTrust also reasserts that *Langston* is applicable, despite SMO's assertion otherwise. (*Id.* at 7.) Like in *Langston*, SunTrust contends that SMO does not offer any competent summary judgment evidence: (1) controverting the fact that SunTrust has a fully automated system; (2) showing that SunTrust acquired actual knowledge of the conflict between the 2:46 p.m. acceptance and 2:47 p.m. payment; or (3) refuting that any actual knowledge SunTrust may have acquired regarding the conflict on May 9, 2019, is immaterial, given that knowledge is determined at the time of payment under La. R.S. § 10:4A-207. (*Id.*) Thus, SunTrust contends that summary judgment is proper, and SMO's claim should be dismissed with prejudice. (*Id.* at 8.)

## V.    DISCUSSION

### A.    *Applicable Law*

#### *1. Louisiana's UCC Generally and La. R.S. § 10:4A-207 in Particular*

"Louisiana law applies in this diversity case." *Jorge-Chavelas v. La. Farm Bureau Cas. Ins. Co.*, 917 F.3d 847, 850 (5th Cir. 2019) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). "Our task is to determine as best we can how the Louisiana Supreme Court would decide it." *Id.* (cleaned up).  Because of Louisiana's civilian tradition, "Louisiana's 'Constitution, codes, and statutes' are of paramount importance to its judges." *Id.* at 851 (quoting *Am. Int'l Specialty Lines*

*Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003)).

> Unlike stare decisis, which can flow from one decision, in the civil system numerous court decisions must agree on a legal issue to establish *jurisprudence constante* (French for constant jurisprudence). And even when that consensus exists in the caselaw, it remains only persuasive authority for the *Erie* guess; "we are not strictly bound" by the decisions of Louisiana's intermediate courts.

*Id.*

Louisiana adopted the UCC "in an effort to harmonize the commercial law of Louisiana with that of the other states." *Cromwell v. Com. & Energy Bank of Lafayette*, 464 So. 2d 721, 730 (La. 1985). The Supreme Court of Louisiana has stated: "We should, therefore, examine the jurisprudence of other states . . . " when interpreting the UCC. *Id.* "Louisiana has enacted all the Articles of the model Uniform Commercial Code, except Articles 2, pertaining to sales, and 2A pertaining to leases." *Ducote v. Whitney Nat'l Bank*, 16-574 (La. App. 5 Cir. 2/22/17), 212 So. 3d 729, 732, *writ denied*, 2017-0522 (La. 5/26/17), 221 So. 3d 860. Namely, Louisiana has adopted Chapter 4A of the UCC. *See generally id.*

"UCC § 4A-207 governs liability when a wire transfer 'misdescribes' a beneficiary." *Langston & Langston, PLLC v. SunTrust Bank*, 480 F. Supp. 3d 737, 742 (S.D. Miss. 2020). "A misdescription occurs when a wire identifies a beneficiary by name and account and the name and account number identify different persons or entities." *Id.* (citing *First Sec. Bank of N.M., N.A. v. Pan Am. Bank*, 215 F.3d 1147, 1152 (10th Cir. 2000)). Again, Louisiana's adoption of UCC § 4A-207, La. R.S. § 10:4A-207, provides in relevant part:

> (b) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:
>
> > (1) Except as otherwise provided in Subsection (c), if the beneficiary's bank does not know that the name

and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.

(2) If the beneficiary's bank pays the person identified by the name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.

La. R.S. § 10:4A-207.

The comment to La. R.S. § 10:4A-207(b) states that this statute "deals with the problem of payment orders in which the description of the beneficiary does not allow identification of the beneficiary because the beneficiary is described by name and by an identifying number or an account number and the name and number refer to different persons." La. R.S. § 10:4A-207 cmt. 2. "Subsection (b)(1) deals with the typical case in which the beneficiary's bank pays on the basis of the account number and is not aware at the time of payment that the named beneficiary is not the holder of the account which was paid." *Id.* In such a case, a "[b]eneficiary's [b]ank has no duty to determine whether there is a conflict and it may rely on the number as the proper identification of the beneficiary of the order." *Id.* However, if the "[b]eneficiary's [b]ank knew about the conflict between the name and number and nevertheless paid [the incorrect person], subsection (b)(2) applies," and the "[b]eneficiary's [b]ank takes the loss." *Id.*

The comment specifically explains how this subsection was designed to promote automated systems:

A very large percentage of payment orders issued to the beneficiary's bank by another bank are processed by automated means using machines capable of reading orders on standard

15

formats that identify the beneficiary by an identifying number or the number of a bank account. The processing of the order by the beneficiary's bank and the crediting of the beneficiary's account are done by use of the identifying or bank account number without human reading of the payment order itself. The process is comparable to that used in automated payment of checks. The standard format, however, may also allow the inclusion of the name of the beneficiary and other information which can be useful to the beneficiary's bank and the beneficiary but which plays no part in the process of payment. If the beneficiary's bank has both the account number and name of the beneficiary supplied by the originator of the funds transfer, it is possible for the beneficiary's bank to determine whether the name and number refer to the same person, but if a duty to make that determination is imposed on the beneficiary's bank the benefits of automated payment are lost. Manual handling of payment orders is both expensive and subject to human error. If payment orders can be handled on an automated basis there are substantial economies of operation and the possibility of clerical error is reduced. Subsection (b) allows banks to utilize automated processing by allowing banks to act on the basis of the number without regard to the name if the bank does not know that the name and number refer to different persons.

*Id.*

### 2. Payment

"The time of payment is the pertinent time at which knowledge or lack of knowledge must be determined." *Id.* Payment by beneficiary's bank to beneficiary is defined in Louisiana Revised Statutes § 10:4A-405. This statute provides in relevant part:

> (a) If the beneficiary's bank credits an account of the beneficiary of a payment order, payment of the bank's obligation under R.S. 10:4A-404(a) occurs when and to the extent (i) the beneficiary is notified of the right to withdraw the credit, (ii) the bank lawfully applies the credit to a debt of the beneficiary, or (iii) funds with respect to the order are otherwise made available to the beneficiary by the bank.

La. R.S. § 10:4A-405(a)(i)–(iii).

The language from Louisiana Revised Statutes § 10:4A-405 tracks the language of the UCC § 4A-405(a). *See* UCC § 4A-405(a). In *First Security Bank of New Mexico, N.A.*, the Tenth

Circuit analyzed what a "payment" is under this particular UCC provision regarding a wire transfer. *First Sec. Bank of N.M., N.A. v. Pan Am. Bank*, 215 F.3d 1147 (10th Cir. 2000). The court held: "Payment may occur . . . when a beneficiary's account is credited and the funds immediately are made available to the beneficiary." *Id.* at 1159.

### 3. Knowledge

Under Louisiana Revised Statute § 10:1-202(b), " 'knowledge' means actual knowledge. 'Knows' has a corresponding meaning." La. R.S. § 10:1-202(b); *see also* La. R.S. 4A-207 cmt. 2 (" 'Know' is defined in Section 1-201(25) to mean actual knowledge . . . ."). Likewise, the United States Court of Appeals for the Tenth Circuit has held that Article 4A of the UCC's use of the word knowledge "means actual knowledge, not constructive knowledge, and is determined at the time of payment." *First Sec. Bank of N.M., N.A.*, 215 F.3d at 1153.

The Southern District of Mississippi in *Langston & Langston, PLLC v. SunTrust Bank* interpreted actual knowledge with respect to automated systems like the one at issue here. *Langston*, 480 F. Supp. 3d at 742–44. The Court finds *Langston* highly persuasive and useful in interpreting La. R.S. § 10:4A-207, so a detailed discussion is warranted.

In *Langston*, a Mississippi law firm represented a family in a wrongful death suit. *Id.* at 740. The represented family reached a settlement, and the lump sum agreed upon was to be distributed equally among the three family members. *Id.* However, an unknown individual hacked the email account of one of the family members. *Id.* The hacker emailed the law firm with fraudulent wiring instructions regarding distribution of the family settlement proceeds. *Id.* The *Langston* defendant, the same defendant as the case before this court, SunTrust Bank, received a request to transfer funds from the law firm's bank at 12:01 p.m., and at 12:02 p.m., the funds were credited to the account. *Id.* The account did not belong to one of the intended family members but

instead belonged to the hacker. *Id*. The law firm's bank notified SunTrust of the fraud at 2:42 p.m. that same day, and twenty-six minutes later, the hacker withdrew a majority of the funds. *Id*.

In its analysis, the court explained that "to have 'actual knowledge of a piece of information, one must be aware of it.' " *Id.* at 743–44 (citing *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 776 (2020)). Further, even if inspecting data would reveal a misdescription, mere data stored in a computer system does not constitute actual knowledge. *Id*. at 744 (citing *Wetherill v. Bank IV Kan., N.A*., 145 F.3d 1187, 1192 (10th Cir. 1998)). The court held that since SunTrust had a fully automated system and the time between receipt of the payment order from the law firm's bank and actual payment to the hacker's account was only one minute, SunTrust lacked actual knowledge of the discrepancy. *Id.* The earliest SunTrust could have had actual knowledge of the misrepresentation was at 2:42 p.m. on the day of the transfer when the law firm's bank notified SunTrust of the suspected fraud. *Id.* Thus, since SunTrust did not have actual knowledge of the conflicting account name and number prior to payment, it could not be liable under UCC § 4A-207. *Id.*

### B.  *Analysis*

Here, to show that no reasonable juror could find SunTrust liable under La. R.S. § 10:4A-207(b) for the misdescription, SunTrust must show that it did not have knowledge of the conflicting account name and number prior to payment of the wire. "Payment" of the wire as defined by La. R.S. § 10:4A-405 occurred on April 23, 2019, at 2:47 p.m. when the "funds with respect to the order [were] otherwise made available to the beneficiary by the bank." *See* La. R.S. § 10:4A-405. Thus, to be subject to liability under La. R.S. § 10:4A-207(b), SunTrust must have had knowledge of the misdescription prior to 2:47 p.m. on April 23, 2019.

The level of knowledge required to invoke liability under La. R.S. § 10:4A-207(b) is actual,

rather than constructive, knowledge. *See* La R.S. § 10:1-202(b); *id.* cmt. 2. Since SunTrust received the wire on April 23, 2019, at 2:46 p.m. and made the payment at 2:47 p.m., SunTrust had one minute to acquire the actual knowledge needed before payment to be liable under La. R.S. § 10:4A-207(b). As the Southern District of Mississippi explained in *Langston*, SunTrust would have had actual knowledge during this minute between receipt and payment only if it was aware of the misdescription. *See Langston*, 480 F. Supp. 3d at 742–44.   But it is undisputed that, because the wire did not stop in the repair queue, SunTrust did not manually intervene or review the wire prior to processing the wire transfer order. (SUMF, Doc. 45-2 at ¶ 9; *See* POSMF, Doc. 47-1 at ¶ 9.) Thus, SMO fails to create a question of fact on this issue.

SMO attempts to preclude summary judgment through a dispute as to whether there was comparison of the account name and number within SunTrust's automated systems. (SUMF, Doc. 45-2 at ¶ 11; *See* POSMF, Doc. 47-1 at ¶ 11.) Although both parties raise different issues of fact as to how SunTrust's automated systems work, this Court finds that these factual differences are immaterial. Regardless of whether inspection of the data would have revealed the conflicting account name and number, the fact that SunTrust's systems stored data regarding the misdescription does not constitute SunTrust having actual knowledge of such. *See Langston*, 480 F. Supp. 3d at 743–44; *Wetherill*, 145 F.3d at 1192.

Additionally, in its *Opposition*, SMO raises the argument that unlike the automated systems in *Langston*, SunTrust's automated systems in the present case were specifically designed to target and share account names and numbers in validating wire transactions. (*Opp'n*, Doc. 47 at 9.) Further, SMO complains of SunTrust's decision to design and operate its systems in such a way prevents this knowledge from ever being more than mere pieces of digitally stored data. (*Id.*)

This Court finds these distinctions to be immaterial as well. Despite any alleged attempt to circumvent the actual knowledge standard for electronically stored data, if such data is merely stored electronically and not reviewed manually, the data will not constitute actual knowledge. *See Langston*, 480 F. Supp. 3d at 743–44; *Wetherill*, 145 F.3d at 1192.

Since it is undisputed that there was no manual intervention or review prior to the wire transfer order, SunTrust did not have actual knowledge of the misdescription prior to the 2:47 p.m. payment. Instead, SunTrust acquired actual knowledge of the misdescription on May 9, 2019, when Whitney called and alerted SunTrust of the alleged fraud. Since SunTrust acquired actual knowledge of the misdescription on May 9, 2019, two weeks *after* the April 23, 2019, at 2:47 p.m. payment, SunTrust did not have knowledge of the misdescription prior to payment. Thus, no reasonable juror can find that SunTrust is subject to liability under La. R.S. § 10:4A-207, and SunTrust's *Motion for Summary Judgment* will be granted.

In closing, while the Court is sympathetic to the loss SMO sustained, the comment to La. R.S. § 10:4A-207 bears repeating:

> If the beneficiary's bank has both the account number and name of the beneficiary supplied by the originator of the funds transfer, it is possible for the beneficiary's bank to determine whether the name and number refer to the same person, but if a duty to make that determination is imposed on the beneficiary's bank the benefits of automated payment are lost. Manual handling of payment orders is both expensive and subject to human error. If payment orders can be handled on an automated basis there are substantial economies of operation and the possibility of clerical error is reduced. Subsection (b) allows banks to utilize automated processing by allowing banks to act on the basis of the number without regard to the name if the bank does not know that the name and number refer to different persons.

La. R.S. § 10:4A-207 cmt. b.  Ultimately, the result reached in this case is consistent with the plain language of La. R.S. § 10:4A-207 and, per this interpretive comment, the policy underlying that statute.

## VI.    CONCLUSION

Accordingly,

**IT IS ORDERED** that *Motion for Summary Judgment* (Doc. 45) filed by Defendant SunTrust Bank is **GRANTED**, and the remaining claim by Plaintiff Squeeze Me Once, LLC, against SunTrust is **DISMISSED WITH PREJUDICE.**

Signed in Baton Rouge, Louisiana, on <u>September 22, 2022</u>.


**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**